UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SH3 HEALTH CONSULTING, LLC, *et al.*,  )
)
    Plaintiffs,  )
)
v.  )  Case No.
)
ST. LOUIS COUNTY, COUNTY EXECUTIVE)
   DR. SAM PAGE,  )
       in his official capacity only, *et al.*,  )
)
    Defendants.  )

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs, by counsel W. Bevis Schock, state for their Memorandum in Support of their Motion for Temporary Restraining Order:

St. Louis County and City of St. Louis officials have issued orders that due to the coronavirus epidemic all non-essential businesses be closed. Under Missouri law, however, during a statewide pandemic only Dr. Randall Williams, the Missouri Director of Health and Senior Services, can order the closure of "places of public or private assembly". The City and County Orders are therefore unlawful and should be enjoined by this court.

### NO SCIENCE – NO POLICY

Plaintiffs make no assertion regarding the merits of any scientific view of the coronavirus epidemic and Plaintiffs make no assertion about how the fear of loss of life due to the virus should be balanced against the interest of the people in having the economy reopened.

Plaintiffs only assert that the view of the state's Director of Health and Senior Services, who has as of this filing not any orders that places of private public assembly be closed, trumps the views of the local official Defendants.

## PARTIES, FACTS AND NATURE OF CLAIMS

Plaintiffs SH3 Health Consulting, LLC and Elder's Antiques, LLC operate "non-essential" businesses in St. Louis County and the City of St. Louis, respectively, the former a gym and the latter an antiques store. Each of those LLC's has one member, Allan Finnegan and Cherri Elder, respectively. Defendants are County Executive Sam Page, the St. Louis County Acting Director, Chief Medical Officer, Department of Public Health Dr. Emily Doucette, City of St. Louis Mayor Lyda Krewson, and the Director of Health/Hospitals, Commissioner Frederick Echols, M.D.

The State of Missouri is in the midst of a statewide epidemic from the coronavirus. Defendants have issued Orders which require Plaintiffs to "cease" their operations. As of this filing those Orders are in effect and have no expiration date.

The specific sections of the Orders Plaintiffs challenge are:

    The bolded section of Dr. Doucette's Order, Ex. 4, regarding closing businesses.

    (For the sake of context Plaintiff includes all of section C):

        C.    Businesses

            1.    Essential Business may continue necessary activities so long as they comply, To the maximum extent possible, with Social Distancing Requirements for both employees and members of the public, including but not limited to, customers standing in line. All Essential Businesses are strongly encouraged to remain open.

            2.    **All businesses other than Essential Businesses shall cease all activities** withing the County except:

                i.    Minimum Basic Operations; and

                ii.    business activities consisting of employees or contractors performing activities at their own Residences (i.e., working from home). Businesses may provide pickup or delivery services so long as they otherwise comply with this Order.

>> 3. No businesses or persons may operate or engage in a Prohibited Activity.

("The Challenged County Paragraph").

The entire section of Dr. Echols's Order, Ex. 6 regarding closing businesses which states:

> All businesses, not-for-profits, and other institutions are allowed to maintain the value of inventory and infrastructure, provide security, process payroll or employee benefits, or facilitate employees working remotely, but are required to cease all other activities.

("The Challenged City paragraph").

Dr. Randall W. Williams, M.D., FACOG, the State of Missouri Director of the Department of Health and Senior Services, meanwhile, has in the course of the pandemic issued two Orders, on April 3, 2020, Ex. 7 and April 16, 2020, Ex. 8, but those Orders expired on Sunday, May 3, 2020, the day before Plaintiffs are filing this case.

RSMo. 190.300 allows local officials to issue orders during times of a health crisis such as this, but such orders "shall not be in conflict with any rules or regulations authorized and made by the department of health and senior services":

> 1. The county commissions and the county health center boards of the several counties may make and promulgate orders, ordinances, rules or regulations, respectively as will tend to enhance the public health and prevent the entrance of infectious, contagious, communicable or dangerous diseases into such county, but any orders, ordinances, rules or regulations shall not:
>
>> (1) **Be in conflict with any rules or regulations authorized and made by the department of health and senior services** in accordance with this chapter or by the department of social services…

(Emphasis added).

RSMo. 190.290 echoes RSMo. 190.300:

3

> All rules and regulations authorized and made by the department of health and senior services in accordance with this chapter shall supersede as to those matters to which this chapter relates, all local ordinances, rules and regulations and shall be observed throughout the state and enforced by all local and state health authorities.  Nothing herein shall limit the right of local authorities to make such further ordinances, rules and regulations **not inconsistent with the rules and regulations** prescribed by the department of health and senior services which may be necessary for the particular locality under the jurisdiction of such local authorities. (Emphasis added).

The relevant regulation is 19 CSR § 20-20.050(3):

> The local health authority, the director of the Department of Health and Senior Services or the director's designated representative is empowered to close any public or private school or other place of public or private assembly when, in the opinion of the local health authority, the director of the Department of Health and Senior Services or the director's designated representative, the closing is necessary to protect the public health.  **However, in a statewide pandemic, only the director of the Department of Health and Senior Services or the director's designated representative shall have the authority to close a public or private school or other place of public or private assembly**.  The director or designated representative shall consult with the local health authorities prior to any such closing.  Any school or other place of public or private assembly that is ordered closed shall not reopen until permitted by whomever ordered the closure.

(Emphasis added).

The statute thus requires local officials to only issue orders which are consistent with 19 CSR § 20-20.050(3).  That regulation allows ONLY the Director of the Department of Health and Senior Services to close places of private assembly.  Gyms and antique stores are places of private assembly.

Defendants' Orders violate Plaintiffs' rights to assembly, association, and due process.  In the case of due process, Plaintiffs' deprivation of their property rights is conscience shocking and in violation of one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.  *Groenewold v. Kelley*, 888 F.3d 365, 373 (8th Cir. 2018).

4

Defendants' Orders that businesses, including Plaintiffs' businesses, cease operations are facially unlawful, and should be subject to an immediate temporary restraining order.

## NO FACTS IN DISPUTE – WHOLLY A MATTER OF LAW

No facts are in dispute in this matter, and thus the issues before the court are wholly a matter of law.

## DISCUSSION

### Jurisdiction

Plaintiffs' Complaint for injunctive and declaratory relief is brought pursuant to 42 U.S.C. § 1983.  In their Motion for Temporary Restraining Order, Plaintiffs assert that the County and City have violated and continue to violate Plaintiffs' fundamental rights to association, assembly and due process.

Neither Fed.R.Civ.P. 65, which details the procedure for preliminary injunctive relief and temporary restraining orders, nor Fed.R.Civ.P. 57 which details the procedure for a declaratory judgment, confers jurisdiction.  A request for injunctive relief must have an independent basis for federal court jurisdiction. *See* 13 Moore's Federal Practice § 65.05 (3d ed. 2001).

Nevertheless, under 28 U.S.C. § 1331 federal jurisdiction exists if the request for relief involves a question of federal constitutional or statutory law.  Plaintiffs also have jurisdiction pursuant to 1343(a)(3), conferring jurisdiction in civil rights cases, and 28 U.S.C. 2201, which confers jurisdiction to render declaratory judgments in such circumstances.

Preliminary injunctive relief is available to "redress alleged civil rights violations in actions brought under 42 U.S.C. § 1983 and in other civil rights actions." 13 Moore's Federal Practice § 65.22[4] (citing *Gannon v. Action,* 303 F. Supp. 1240, 1247 (E.D. Mo. 1969), *aff'd in*

*part* 450 F.2d 1227 (8th Cir. 1971), and *Central Presbyterian Church v. Black Liberation Front,* 303 F. Supp. 894, 901 (E.D. Mo. 1969)).

Therefore this court has jurisdiction to hear this Motion for Temporary Restraining Order.

## Standard for Granting Temporary Restraining Order

When determining whether to grant a motion for temporary restraining order or a preliminary injunction, this Court considers the same factors, *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (citing *Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  In determining whether to grant a temporary restraining order the Court considers: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; (3) the likelihood that the moving party will prevail on the merits; and (4) the public interest. *Phelps-Roper v. Nixon*, 509 F.3d 480, 484 (8th Cir. 2007). No single factor is determinative; they must be "balanced to determine whether they tilt towards or away" from granting the injunction. *Noodles Development, LP. V. Ninth Street Partners, LLP*, 507 F. Supp. 2d 1030, 1034 (E.D. Mo. 2007). A temporary restraining order "is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *North Dakota v. U.S. Army Corps of Eng'rs*, 264 F. Supp. 2d 871, 878 (N.D. 2003) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## Irreparable Harm to the Movant

As long as the Challenged Paragraphs remain in effect, **Plaintiffs** will lose their rights to assembly, association and due process.  **Plaintiffs** lose their right to assemble because they and their customers cannot assemble in their businesses.  The right of assembly is a fundamental

6

right, *Holdridge v. United States*, 282 F.2d 302, 311 (8th Cir. 1960).  Similarly, they lose the right to associate with their customers , because while under the Orders they cannot gather.  Particularly, when Plaintiffs' staff and customers interact they engage in expressive association and the advancement of shared beliefs.  In the case of SH3, LLC they engage in expressive association regarding the need for exercise and social discourse to improve physical, mental and spiritual health, and regarding other topics, and in the case of Elders, LLC, they engage in expressive association regarding the artistic merits of different antiques, and regarding other topics.  The personnel and customers of other businesses throughout St. Louis County and the City of St. Louis engage in similar assembly and association.  See *Democratic Party v. Wisconsin ex rel. LaFollete,* 450 U.S. 107, 121–22 (1981); *Hsu v. Roslyn Union Free Sch. Dist. No. 3,* 85 F.3d 839, 859 (2d Cir.1996).  The right of association is a fundamental right, *United States v. Kelly*, 677 F.3d 373, 376 (8th Cir. 2012).  Plaintiffs lose the right to due process because the Challenged Paragraphs are in violation of Missouri statutes, and with their businesses closed Plaintiffs lose the right to have the liberty to go about their occupations as they choose, and they lose their right to use their assets to earn a living.  The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property, *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  The right to due process is a fundamental right when misconduct of officials is conscience shocking and in violation of one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.  *Groenewold v. Kelley*, 888 F.3d 365, 373 (8th Cir. 2018).  Defendants ordering Plaintiffs to close their businesses, when Defendants have no right to issue such orders, violates the principle of ordered liberty.

**Balance of the Harms**

Perhaps Defendants will say they know better and the harm of spreading the virus outweighs all other factors. The problem with this analysis is that no single public health official is necessarily correct about the nature and course of this virus, and the state's head health official, the Director of Health and Senior Services, Dr. Williams, presumably believes that it is reasonable to open businesses, because he has not ordered all state non-essential businesses closed. When the court does not know which expert is right, the proper balancing of the harms is to follow the statutes and regulations and make no value judgments at all.

### Likelihood of Success on the Merits

Plaintiffs incorporate their discussion above regarding the language of the statutes and the regulation. Plaintiffs will now address further details.

1.  "State Wide Pandemic". In his April 24, 2020, Executive Order 20-09 the Governor declared that we are in a "state of emergency" due to the World Health Organization identified "pandemic". Plaintiffs presume that Defendants will admit we are in a statewide pandemic.

2.  Place of Private or Public Assembly. Places of "public assembly" are defined in the Missouri case law as places "where people are wont to assemble", *Derboven v. Stockton*, 490 S.W.2d 301, 310 (Mo. App. 1972), a personal injury case related a fire in a location in which the doors, tragically, only opened inwardly[1]. Plaintiff

---

[1] The relevant paragraph from *Derboven* states in relevant part:

> Equally plain is the legislative intent to eliminate the danger to the public from exit doors which would not freely open upon the occasion of fire when large groups of people sought simultaneous exit. The plain language of the statute makes it apply to public school houses and all other public buildings. Conjunctively included are theaters, assembly rooms, halls, churches, and factories with more than twenty employees. From this, it can be concluded that the legislature was enumerating all of the places generally recognized as places of public assembly and with no more the Randolph Tavern would not be included under the terms and provisions of the statute, but the legislature included

asserts that gyms and antique shops are places where people are "wont to assemble".

3. Businesses "Closed". The Challenged Paragraphs state that non-essential businesses are to "cease all activities". Plaintiffs believe that to "cease all activities" is "to close."

4. No Delegation. Dr. Williams' order does not specifically delegate any persons as his representatives to order closures. Plaintiffs acknowledge that it does state, that "Nothing herein shall limit the right of local authorities to make such further ordinances, rules, regulations, and orders not inconsistent with this Order which may be necessary for the particular locality under the jurisdiction of such local authorities", but Plaintiffs believe that a delegation must be to a specific person, that is, a "representative", and not a group of persons, that is, "local authorities".

5. Article VI § 19(a). The government of the City of St. Louis greets all challenges to its authority by stating that it is a charter city and that under Article VI § 19(a)

---

the broad language, 'and of all other buildings or places of public resort whatever where people are wont to assemble.' Considering the rule that words must be given their plain meaning unless otherwise intended, all other buildings can only mean all other buildings where people are wont to assemble. The plain ordinary meaning of those words can only be held to have included the Randolph Tavern. Such intention is strengthened by the use of the word 'whatever' following the words 'places of public resort' which is defined as 'of so matter what type, degree, quality, etc.' Webster's New Twentieth Century Dictionary Unabridged, Second Edition, 1964, p. 2081. 'Resort' by the same authority at page 1542 is defined as, '(A) place to which people go often, customarily, or generally; especially, a place to which people go for rest or relaxation, as on a vacation.' The second definition is 'a frequent, customary, or general going, gathering together, or visiting; as, a place of general resort.' These are not technical terms but plain words and in the only authority in which the words have been judicially defined, public resort and a place of public resort have been extended far beyond even these plain definitions…

Plaintiffs suggest that the discussion "resort" is irrelevant because there is no "conjunctively" language in the Regulation.

9

charter cities can do what they want . Plaintiff presume that argument is forthcoming. Plaintiffs respond with the language of that section of the Missouri constitution:

> Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, **provided such powers are** consistent with the constitution of this state and **are not limited or denied** either by the charter so adopted or **by statute**. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

As outlined above Plaintiffs believe Dr. Echols' Order is in violation of Missouri statutes, because 192.300 and 192.290 require that Orders by compliant with Missouri regulations, and the Regulation, 19 CSR § 20-20.050(3) states that only the Director of Health and Senior Services can order the closure of a place of public or private assembly. Therefore Article VI § 19(a), in this case, is of no help to the City of St. Louis Defendants.

Plaintiffs therefore have a high chance of success on the merits.

### Public Interest

The Eighth Circuit has made clear that "it is always in the public interest to protect constitutional rights." *Phelps–Roper v. Nixon,* 545 F.3d 685, 690 (8th Cir.2008)

### Conclusion as to Four Factors

The four factors the court are all in Plaintiff's favor.

### FACIAL CHALLENGE

Plaintiffs assert a facial challenge because the potential for harm extends beyond the parties, *Rodgers v. Bryant*, 942 F.3d 451, 459 (8th Cir. 2019), and there is no scenario under which the Challenged paragraphs can be lawful.

### PRAYER

10

WHEREFORE, Plaintiffs pray for temporary restraining orders enjoining:

The April 20, 2020 Director of Public Health-Extension and Amendment of Stay at Home Order of Dr. Emily Doucette, Acting Director, Chief Medical Officer, Department of Public Health of St. Louis County, § C, directing that "all businesses other than essential businesses shall cease all activities".

The April 16, 2020 "Stay Home-Essential Activities Only Order, Health Commissioner's Order No. 7" of Frederick Echols, M.D., Director of Health/Hospitals Commissioner of the City of St. Louis, § II, first para, directing that "All businesses, not-for-profits, and other institutions are allowed to maintain the value of inventory and infrastructure, provide security, process payroll or employee benefits, or facilitate employees working remotely, but are required to cease all other activities"

Plaintiffs further pray for attorney's fees and costs, and for such other relief as the court finds to be just, meet and reasonable.

Respectfully Submitted,

　/s/ W. Bevis Schock　.
W. Bevis Schock, 32551MO
Attorney for Plaintiff
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322